WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Donimic T. Brooks,

Plaintiff,

vs.

State of Hawaii, et al.,

Defendants.

No. CV 13-485-PHC-RCB (BSB)

**O R D E R**

## I. Procedural History

On January 10, 2013, Plaintiff Donimic T. Brooks, a State of Hawaii inmate who is confined in the Corrections Corporation of America's Saguaro Correctional Center, filed a document entitled "HRPP Rule 40(c)(2)(3) Form and content, (2) Nonconforming Petition, (3) Separate Cause of Action" ("Complaint") and a Motion for Summary Judgment in the Circuit Court of the First Circuit of the State of Hawaii. On January 18, 2013, the Hawaii Circuit Court ordered all documents in the case to be reassigned as a civil proceeding and served on Defendant State of Hawaii Department of Public Safety. On March 4, 2013, Defendant State of Hawaii filed a Notice of Removal, removing the case to the United States District Court for the District of Hawaii.

In a March 7, 2013 Order, United States District Court Judge Leslie E. Kobayashi concluded that removal was appropriate because Plaintiff was alleging that Defendants had violated the United States Constitution and laws. Judge Kobayashi transferred the

case to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a). The case was assigned to the undersigned.

On March 20, 2013, Plaintiff filed a Motion for Default Judgment. Defendant State of Hawaii filed a Response and Plaintiff filed a Reply. On April 18, 2013, Plaintiff filed a "Motion to Show Cause for Preliminary Injunction and or a Temporary Restraining Order." Defendant State of Hawaii filed a Response and Plaintiff filed a Reply.

In a May 13, 2013 Order, the Court dismissed the Complaint because it was not filed on a court-approved form and denied the Motion for Summary Judgment, Motion for Default Judgment, and Motion to Show Cause. The Court gave Plaintiff 30 days to file an amended complaint on a court-approved form.

On May 24, 2013, Plaintiff filed a First Amended Complaint (Doc. 15). On June 13, 2013, he filed a Motion for Summary Judgment (Doc. 16) and a Memorandum of Law.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

. . . .

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

**III. First Amended Complaint**

In his First Amended Complaint, Plaintiff names as Defendants Warden Todd Thomas, Assistant Warden Benjamin Griego, Administrator/Contract Monitor Shari Kimoto, and Segregation Unit Contract Monitor Scott Jinbo.

In **Count One**, Plaintiff alleges violations of his First Amendment rights to free speech and the free exercise of religion. He claims that he studies both the Christian and Muslim religions and voluntarily participated in the "life principle/faith pod program," which he knew at the outset was Christian-based but accepted inmates of all faiths. Plaintiff contends that he asked the program leader why the prison only offered a Christian-based program, but did not offer programs based on other faiths. Plaintiff states that the program leader did not know, but said that he would ask "the higher ups." Plaintiff asserts that Defendant Griego told him that the curriculum came from the

Corrections Corporation of America, the program was voluntary, and Plaintiff could leave the program if he did not like it. Plaintiff did not leave the program.

Plaintiff contends that the following day, Defendant Thomas told Plaintiff that he had better stop asking questions or he would be kicked out of the program or thrown into segregation. Plaintiff alleges that he perceived this to be a personal threat to prevent Plaintiff from exercising his First Amendment rights, documented the incident, and then filed an inmate request, again inquiring as to why there were no faith-based programs for a myriad of other religions.

Plaintiff asserts that his unit manager responded to the inmate request, but the response was actually delivered by Defendant Griego, who handed Plaintiff the response and told Plaintiff that he was being kicked out of the faith pod and that Plaintiff was lucky he was not being placed into segregation. Plaintiff perceived this to be a personal threat and documented it. He then submitted an informal resolution form, claiming that his right to practice and study Islam was being hindered in the faith pod, that Defendant Griego had kicked him out of the pod, and that Defendants Griego and Thomas had threatened him. Unhappy with the grievance officer's response, Plaintiff proceeded to the next step of the grievance process by filing a grievance.

Plaintiff states that while waiting for the response to his grievance, he met with Defendant Griego for an "interview." At that time, Defendant Griego placed Plaintiff into segregation and charged him with hindering and "failure to follow" for attempting to provide false information and hindering the staff by lying. Plaintiff asserts that the charges stem from the contents of his grievance.

Plaintiff claims he was found guilty of the charges and, as a result, lost pay for six months and was placed in segregation for 60 days. Plaintiff appealed and the hearing officer upheld the findings and penalty. Plaintiff submitted to Defendant Thomas an appeal and a request that explained some the inconsistencies he believed were in the reports. Plaintiff claims that Defendant Thomas denied the request, stating that he had

spoken to Plaintiff and that Plaintiff had lied to him, and denied Plaintiff's appeal. Plaintiff submitted a "second request," which Defendant Thomas also denied.

Plaintiff claims he next wrote a letter to Defendant Kimoto about the situation, but Defendant Kimoto did not respond. Plaintiff asserts he subsequently requested that Defendant Kimoto answer his letter, but she has not responded to that request.

Plaintiff asserts that Defendant Griego violated Plaintiff's rights to free speech and his right to "participate and or practice – exercise – a religious program."

In **Count Two**, Plaintiff alleges a violation of his Fifth and Fourteenth Amendment rights regarding disciplinary proceedings. Plaintiff contends that Defendant Griego violated the grievance policy by placing Plaintiff in punitive segregation for 60 days for submitting a grievance. Plaintiff claims that this was an "atypical environment." Plaintiff asserts that Defendant Thomas violated his rights by failing to grant Plaintiff's disciplinary appeal and that Defendants Kimoto and Jinbo are liable because of their "inaction." In addition, Plaintiff contends that Defendants violated his "right to grievance the government for redress" and violated the prison's disciplinary procedures.

In **Count Three**, Plaintiff alleges that Defendants Griego and Thomas retaliated against him, in violation of his Eighth Amendment rights, "[d]ue to the actions stated in [Counts] (1) and (2)." Plaintiff appears to be asserting that Defendants Griego and Thomas retaliated against him for filing a grievance claiming they had threatened him.

In his Request for Relief, Plaintiff seeks monetary damages and injunctive relief.

## IV. Discussion of the First Amended Complaint

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

. . . .

. . . .

**A. Count One**

It appears Plaintiff is alleging in Count One that he was denied his First Amendment right to free exercise and was retaliated against for the content of his grievance.

**1. Free Exercise**

To state a First Amendment, free-exercise-of-religion claim, a plaintiff must allege that a defendant substantially burdened the practice of the plaintiff's religion by preventing him from engaging in a sincerely held religious belief and that the defendant did so without any justification reasonably related to legitimate penological interests. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Plaintiff does not allege that the practice of his religion was burdened or that he was prevented from engaging in a sincerely held religious belief. Nor do his allegations support such a claim. At best, it appears that Plaintiff, who studied both Christianity and Islam, was removed from a voluntary, faith-based housing unit or a rehabilitation program that was Christian-based, yet accepted all faiths. Thus, the Court will dismiss without prejudice Plaintiff's free exercise claim.

**2. Free Speech/Retaliation**

Liberally construed, Plaintiff has stated a First Amendment retaliation claim against Defendants Griego and Thomas. The Court will require Defendants Griego and Thomas to answer the free speech/retaliation claim in Count One.

**3. Defendant Kimoto**

Plaintiff's reference to Defendant Kimoto in Count One does not state a First Amendment claim against her. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (defendants did not commit constitutional violations when they denied administrative grievances, failed to intervene on plaintiff's behalf, and failed to remedy allegedly unconstitutional behavior). Thus, the Court will dismiss without prejudice Plaintiff's claim in Count One against Defendant Kimoto.

. . . .

**B. Count Two**

In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to the prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Plaintiff has not described the conditions of his confinement in punitive segregation or discussed whether being placed in punitive segregation affected the duration of his confinement. Simply being placed in punitive segregation for 60 days, in itself, is not an atypical and significant hardship and does not entitle Plaintiff to any due process procedural protections. *See Sandin*, 515 U.S. at 475-76, 487 (30 days' disciplinary segregation is not atypical and significant); *Smith v. Mensinger*, 293 F.3d 641, 654 (3rd Cir. 2002) (seven months of disciplinary confinement "does not, on its own, violate a protected liberty interest"); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998)

(two and one-half years' administrative segregation is not atypical and significant); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating a prisoner's due process rights); *Lucero v. Russell*, 741 F.2d 1129 (9th Cir. 1984) (administrative transfer to maximum security without a hearing does not infringe on any protected liberty interest).

Even if Plaintiff had been subjected to an atypical and significant hardship, procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty-four hours prior to the hearing; (2) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so. *Wolff v. McDonnell*, 418 U.S. 539, 565-66 (1974). Plaintiff does not claim that was denied any of these procedural safeguards.

In addition, "[t]here is no legitimate claim of entitlement to a grievance procedure," *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and the failure to follow grievance procedures does not give rise to a due process claim. *See Flournoy v. Fairman*, 897 F. Supp. 350, 354 (N.D. Ill. 1995) (jail grievance procedures did not create a substantive right enforceable under § 1983); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (violations of grievance system procedures do not deprive inmates of constitutional rights). "[N]o constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Moreover, "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials. Moreover, the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy." *Baltoski v.*

*Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (failure to comply with state's grievance procedure is not actionable under § 1983 and does not compromise an inmate's right of access to the courts).

Finally, Plaintiff's allegations based on Defendant Thomas's failure to grant Plaintiff's disciplinary appeal and Defendants Kimoto and Jinbo's "inaction," do not state a claim. *See Shehee*, 199 F.3d at 300.

Thus, the Court will dismiss without prejudice Count Two.

### C. Count Three

The Court will dismiss Count Three because it is duplicative of his more clearly pled allegations in Count One.

## V. Motion for Summary Judgment

Plaintiff has submitted a Motion for Summary Judgment and a Memorandum of Law, but has failed to file a statement of facts as required by Local Rule of Civil Procedure 56.1(a). Local Rule 56.1(a) provides:

> Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion. The separate statement should include only those facts that the Court needs to decide the motion. Other undisputed facts (such as those providing background about the action or the parties) may be included in the memorandum of law, but should not be included in the separate statement of facts. Each material fact in the separate statement must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.). **A failure to submit a separate statement of facts in this form may constitute grounds for the denial of the motion**.

(Emphasis added.)

Because Plaintiff has failed to comply with Local Rule 56.1(a), the Court will deny without prejudice his Motion for Summary Judgment.

TERMPSREF

## VI. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Counts Two and Three and the Free Exercise claim in Count One of the First Amended Complaint are **dismissed** without prejudice.

(2) Defendants Kimoto and Jinbo are **dismissed** without prejudice.

(3) Defendants Griego and Thomas must answer the free speech/retaliation claim in Count One of the First Amended Complaint.

(4) Plaintiff's Motion for Summary Judgment (Doc. 16) is **denied without prejudice**.

. . . .

. . . .

(5) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 15), this Order, and both summons and request for waiver forms for Defendants Griego and Thomas.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for

photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendants Griego and Thomas must answer the free speech/retaliation claim in Count One of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Bridget S. Bade pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 8th day of September, 2013.

Robert C. Broomfield
Senior United States District Judge

TERMPSREF